# United States District Court for the District of Maryland

Case No.: 1:18-cv-01102

James Henson
*Plaintiff*
v.

Naturmed, Inc. *d/b/a* Institute for Vibrant Living
*Defendant*

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT FOR JOINDER OF ADDITIONAL PARTIES AND TO AMEND THE SCHEDULING ORDER

Charles H. Edwards IV, Esquire
Law Office of Barry R. Glazer, LLC
1010 Light Street
Baltimore, Maryland 21230
Phone: (410) 547-8568
Fax:   (410) 547-0036
Email: charles.edwards@robinhoodlawyers.com

INTENTIONALLY BLANK

Now comes the Plaintiff, James Henson, by and through his attorneys, Charles H. Edwards IV and the Law Office of Barry R. Glazer, LLC, files this Motion for Leave to Amend the Complaint, for Joinder of Additional Parties, and to Amend the Scheduling Order, and sets forth his supporting grounds and authorities below:

## PRELIMINARY STATEMENT

Following the serious injuries James Henson sustained after ingesting the Defendant's All Day Energy Greens (*hereinafter*, the "Energy Greens"), he filed this class action just a few short months ago on behalf of himself and all others in Maryland similarly situated. Very recently, while in the process of designating an expert witness to opine about matters related to class certification, Mr. Henson discovered that there are indispensable parties that need to be added to this lawsuit before it progresses any further. These parties are as follows: (1) Bactolac Pharmaceutical, Inc.; (2) Independent Vital Life, LLC; (3) HKW Capitol Partners III, L.P.; and (4) William Ruble. Henceforth, the aforementioned four parties shall collectively be referred to as the "Indispensable Parties."

The Indispensable Parties were known to the Defendant from the outset of this litigation. In fact, this is not the first lawsuit against the Defendant arising out of serious injuries that have been sustained following the ingestion of Energy Greens and in the other similar lawsuits the Indispensable Parties have been added as indispensable. As well, in those lawsuits that have been filed as class actions, there has been appropriate discovery permitted on the Defendant and the Indispensable Parties, protective orders requiring the production of over a hundred thousand documents, information relating to the preservation of some of the batches of Energy Greens that are at issue in this litigation, and depositions of the parties' personnel that were directly involved in the production, packaging, marketing, and sales of Energy Greens. This was all before the designation of any expert witnesses. And any expert opinion rendered in this litigation necessarily must include the aforementioned available discovery. See Protective Order, attached hereto as Exhibit 1; Scheduling Order, attached hereto as Exhibit 2.

Mr. Henson seeks an appropriate order from this Court to accommodate the comprehensive discovery that is necessary prior to the designation of any expert witnesses due to both his very recent discovery of the Indispensable Parties and to the corresponding necessary discovery that is needed relating to the Defendant's involvement with the Indispensable Parties. As well, Mr. Henson seeks leave to amend his Complaint to include the very recently discovered information about the Defendant and the Indispensable Parties and appropriate amendments to the scheduling order to accommodate the the discovery that Mr. Henson is permitted to undertake in this litigation.

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any declared or apparent reason-such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.-the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 21 provides that, upon the motion of a party, the Court "may at any time, on just terms, add ... a party." See Fed. R. Civ. P. 21. Whether to grant a motion to add a party lies within the Court's sound discretion. See *Gilbert v. Gen. Elec. Co.*, 347 F. Supp. 1058, 1059 (E.D. Va. 1972). The court in its discretion may grant a motion to add parties where the claims asserted against the parties to be added are not frivolous or patently defective. See *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 571 (E.D. Va. 2004).

The allegations relating to the Defendant and the Indispensable Parties in the proposed Amended Complaint will not be frivolous or patently defective. Rather, the proposed additions are in most instances supported by testimony and documents offered in other lawsuits by the presently named Defendant. Further, permitting the Complaint to be amended and allowing the Indispensable Parties to be added will not be futile, would not prejudice the Defendant, and would not unreasonably delay the matter.

### II. NEWLY DISCOVERED FACTS SUPPORTING AMENDMENT.

#### A. KHW Capital Partners and its Employees

- NaturMed acted "under the direction of both shareholder and board member HKW to wrongfully and fraudulently transfer NaturMed's assets and distribute proceeds. See James Mooningham's Response to Defendant HKW Capitol Partners III's Motion to Dismiss for Lack of Personal Jurisdiction at pg. 9, attached hereto as Exhibit 3.

- At the time of the "original investment February 26, 2010," NaturMed's financial records show HKW acquired 8 million of 15.1 million common share of stock in NaturMed. See Exhibit 3-A.

- Further, HKW remained the controlling shareholder until, at least, the end of 2016. Exhibit 3 at pg. 10.

- HKW held multiple positions on NaturMed's Board of Directors, including the highest position as NaturMed's Chairman of the Board. *Id.* at pg. 11.

- According to NaturMed's Board of Directors' meeting minutes, HKW's Mike Foisy served as the Chairman of NaturMed's Board of Directors. Exhibit 1-B. As Chairman of NaturMed's Board of Directors, HKW's Mike Foisy led Board of Director meetings to discuss and decide intimate details at NaturMed, including new product

development and marketing decisions for NaturMed's AllDay Energy Greens, titled "ADEG BounceBacic." *Id.*

- At least four HKW partners, including HKW's President and CEO, served on the Board of Directors of NaturMed. Exhibit 1 at pg 11. NaturMed documents show the following HKW partners served on NaturMed's Board of Directors: HKW's Mike Foisy (Partner of HKW), Ted Kramer (Partner, President and CEO of HKW), Luke Phenicie (Partner of HKW), and James Snyder (Partner of HKW). *Id.*

- On at least one occasion, HKW brought five HKW partners to a NaturMed Board of Directors meeting. See Exhibit 3-C.

- Additionally, HKW admits that it was a "party to a shareholder agreement that described how the members of NaturMed's Board of Directors were determined." Exhibit 3 at pg. 12.

- HKW's Mike Foisy served as NaturMed's Chief Executive Officer when HKW initiated the sale of NaturMed's sole assets, received the proceeds from NaturMed's asset sale, and left NaturMed insolvent. *Id.*

- The sale of NaturMed's assets occurred after numerous personal injury lawsuits were filed against NaturMed and was a fraudulent conveyance intended to avoid payment of any judgment. *Id.*

- HKW's Mike Foisy signed the official sale and transfer documents as "Michael A. Foisy, CEO" of "NaturMed, Inc." *Id.* Further, a letter addressed to "Mr. Michael A. Foisy, Chief Executive Officer, NaturMed, Inc." details the restructuring, compensation, and terms of the agreement. *Id.* At the bottom of the letter, Mike Foisy signs the signature line for NaturMed, Inc.'s "Chief Executive Officer." *Id.*

- From 2014 to 2016, NaturMed's Financial Reporting Memorandums show monthly financial reports of NaturMed's sales, costs, and fees. Exhibit 3-D. In these financial reports, numbers were calculated for a category titled: "HKW & BOD Fees." *Id.* This category clearly shows that NaturMed defined, calculated, and considered these fees to be co-equal as it relates to both HKW and NaturMed's Board of Directors. *Id.* Further, NaturMed paid $240,000 per year in "management fees" to HKW. *Id.* Additionally, the notes from this Audit Report states: "The Company pays consulting and director fees to officers of HKW." *Id.*

- HKW's Mike Foisy along with fellow NaturMed Board Member Bryan Smith served as NaturMed's "Compensation Committee." On January 12, 2016, NaturMed President, Bill Ruble, emailed NaturMed's Director of Research and Development of Product Quality, Jennifer Cooper, regarding Jennifer Cooper's request for a raise and bonus. Exhibit 3-F. Bill Ruble indicated that her request needed to be made to "Mike and Bryan (`Compensation Committee')." *Id.* Thus, NaturMed employees needed permission and approval from HKW's Mike Foisy for additional compensation.

- In an email dated September 15, 2015, Franklin Tsung from Black Crown Holdings emailed Ted Kramer with the subject line,"NatureMed and HKW." Exhibit 3-G. In this email, Mr. Tsung proposed a discussion regarding "the prospective acquisition of NaturMed. *Id.* Subsequently, Caroline Young (Partner of HKW) contacted NaturMed's Board of Directors, including Mike Foisy, to set up a discussion time. *Id.*

- On December 5, 2015, HKW's Mike Foisy forwarded this email to NaturMed's Bill Ruble alone, and said, "I don't want to blur the CEO function until we have a fully devised plan." *Id.*

- In August 2014, NaturMed made a Board of Directors change, switching Luke Phenicie (HKW Partner) for Ted Kramer (HKW Partner, CEO and President). Exhibit 3-H. This change was made without the knowledge of Larry Zic, NaturMed's Chief Financial Officer. When NaturMed's President and Board Member, Bill Ruble, communicated this information to Zic, Ruble informed Zic that "Mike [Foisy] was going to call you about taking over the Treasurer position and "Board Treasurer is a good move and shows that Mike [Foisy] is paying attention to your work and your capacity." *Id.* Subsequently, Larry Zic was appointed to this role as Board Treasurer of NaturMed. Exhibit 3-I.

- NaturMed documents show the nature and extent of HKW's involvement in NaturMed's demise. In as early as 2015, HKW planned to drain funds from NaturMed. In an email chain between HKW and NaturMed, discussions show, in 2014, NaturMed paid no bonuses to high-ranking officials. Exhibit 3-J. In 2015, HKW's Mike Foisy proposes that, before Bill Ruble makes his planned exit from NaturMed in 2017, NaturMed should pay out bonuses in 2015 "at a higher level than the budget" and apply these bonuses retroactively. *Id.* NaturMed's financial records show this is exactly what happened. For instance, a spreadsheet details NaturMed's President Bill Ruble's "Bonus Plan," attached as Exhibit 3-K. (Author is Michael Foisy). The spreadsheet's document properties affirm that Bill Ruble's "Bonus Plan" was originally authored by HKW's Mike Foisy. At the time of the fraudulent transfer, HKW acknowledged that NaturMed had "few remaining assets." *Id.*

- HKW's Mike Foisy signed the transfer documents as NaturMed's CEO. Exhibit 3-L.

B. **Bactolac Pharmaceutical, Inc.**

- On or about May 13, 2010, Naturmed and Bactolac entered into a Manufacture and Supply Agreement (*hereinafter,* the "MSA") in which NaturMed contracted with Bactolac for the manufacture and supply of certain dietary supplements, including Energy Greens. See Copy of MSA, attached hereto as Exhibit 4.

- Under the MSA, Baetolac agreed to label, for shipment, and to deliver to NaturMed, certain products based on purchase orders from NaturMed. *Id.*

- Bactolac agreed to manufacture, package, label, and pack the products in "strict compliance" with the produce and packaging specifications provided by NaturMed. *Id.*

- In the MTA, Bactolac expressly represented and warranted to to NaturMed that all products purchased and delivered pursuant to the MTA would be manufactured and packaged in accordance with the specifications, would be merchantable, and would be free from defects in workmanship and materials. *Id.*

- NarurMed claims that it was Bactolac and not NaturMed that adulterated Energy Greens by deviating from the ingredients it contracted to use in mixing Energy Greens and instead used harmful chemicals and toxins.

### C.   Independent Vital Life, LLC

- On or about April 27, 2017, Independent Vital Life, LLC (*hereinafter,* "IVL2" was incorporated in the state of Delaware by Don and Johna Elgie, the original founders of NaturMed. See James Mooningham's Third Amended Complaint at pg. 8, attached hereto as Exhibit 4.

- In or around April of 2017, IVL2 entered into an agreement for the purchase of all of NaturMed's assets. *Id.*

- On or about April 27, 2017, NaturMed ceased business operations. *Id.*

- On or about May 1, 2017, IVL2 began its business operations.

- IVL2 operates at NaturMed's former location, 661 E. Howards Road, Camp Verde, Arizona.

- IVL2 retained NaturMed's initials and logo.

- IVL2 also retained many key personnel from NaturMed, including NaturMed's Director of Operations.

- IVL2 continues to operate NaturMed's website, www.ivlproducts.com, selling NaturMed products, which still bear NaturMed's "Institute for Vibrant Living" brand.

- IVL2 has made every effort to benefit from the reputation established by NaturMed. In addition to maintaining NaturMed's logo and website, www.ivlproducts.com still contains customer reviews that pre-date its ownership of NaturMed products.

- IVL2 facilitated a seamless transfer of NaturMed's business, with no interruption in business operations.

- Since the asset sale, NaturMed has ceased business operations. NaturMed has not filed articles of dissolution, but is delinquent in filing its 2017 annual report with the Arizona Corporation Commission. *Id.*

### III. THE COURT SHOULD GRANT LEAVE TO AMEND BECAUSE THE FACTS SUPPORTING THE AMENDMENTS WERE ALREADY KNOWN TO THE DEFENDANT BUT ONLY VERY RECENTLY DISCOVERED BY THE PLAINTIFF

First, there is no undue delay or bad faith on Mr. Henson's part in moving to join the Indispensable Parties. Mr. Henson brings this motion as promptly as possible after learning of facts while in the process of designating an expert witness to opine about class related matters that were not previously known to him. "[D]elay alone is not sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986).

Mr. Henson did not become aware of the scope of the Defendant's knowledge relating to or its collusion with the Indispensable Parties until very recently. And it was only due to the Defendant's decision to withhold key information and delay the progress of this litigation that it took this long to develop these highly relevant facts. See, e.g., *Picker Int'l v. Leavitt*, 128 F.R.D. 3 (D. Mass. 1989) (granting motion for leave to amend complaint and finding no unreasonable delay where plaintiff "could not file [the] amended complaint until well into the discovery process because it was not aware of the scope of defendants allegedly wrongful practices, until it deposed [the defendant's employees]"); see also *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995); *Greenberg v. Mynczywor*, 667 F. Supp. 901, 905 (D.N.H. 1987). Thus, there is no bad faith in seeking leave to amend at this juncture, because had Mr. Henson known earlier of the information that he now knows, amendments would not be necessary and an appropriate scheduling order would have been entered in this matter from the outset.

Second, amendments will not result in undue prejudice to the Defendant. The proposed Amended Complaint will not be asserting a new cause of action against the Defendant as the Complaint already asserts causes of action that include negligence, product liability, consumer protection, and fraud. "[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party." *Johnson*, 785 F.2d at 510. But, in this litigation, that would not even yield any prejudice to the Defendant because this litigation is only in its infancy and the Defendant has already undertaken the same analysis of facts in other cases.

Equally significant, the allegations about the Indispensable Parties come directly from documents produced by the Defendant and the Indispensable Parties in other lawsuits to which the Defendant was a party. There cannot be any prejudice to the Defendant when the proposed amendments are the direct result of information that the Defendant was acutely aware of and consciously made the decision not to disclose to Mr. Henson or use as the basis for a claim of contribution from the Indispensable Parties.

### 1. The Amended Complaint will be Based On Information Discovered After the Initial Pleading Stage and is Not Offered In Bad Faith

Even in circumstances where there has been substantial delay, leave to amend should still be granted so long as the defendant is not prejudiced. See, e.g., *Scott*, 733 F.3d at 118 (holding that denial of leave to amend was improper where the amended complaint did not allege an "entirely new" theory against the Defendant, even though the amendment was proposed three years after the original complaint was filed). Yet, even if there were undue delay, in and of itself, that would not be sufficient justification for preventing Mr. Henson from amending his Complaint. Here, however, there was no unreasonable delay at all.

Finally, Mr. Henson reiterates that there is no plausible basis for finding prejudice to the Defendant and his amended Complaint would not be an exercise in futility. The amended Complaint will add parties that the Defendant was aware of and are indispensable because of their potential culpability arising out of the same occurrences and, in many instances, for their collusion with the Defendant. See, e.g., *Moore v. Dish Network, LLC*, Civil Action No. 3:13–CV–36, 2014 WL 2214714, at *3 (N.D.W. Va. May 28, 2014) (allowing plaintiff to amend the complaint to add a party based on information gleaned through discovery in part because the added party had previously been aware of the case).

## CONCLUSION

This litigation is still in its infancy and the Defendant has not only been acutely aware of the allegations that have very recently come to Mr. Henson's attention, but also has already seen these allegations levied against it in other cases. As well, not only will the Defendant suffer no prejudice following an amendment to the Complaint, but it would also not be a protracted exercise in futility because the parties Mr. Henson seeks to add are indispensable.

Finally, because of the newly discovered information that has been in the Defendant's possession since the outset of this litigation, the scheduling order needs to be amended to accommodate the discovery that Mr. Henson is required to undertake, with allowances for the additional time that it will take to accomplish all other filings.

Mr. Henson would have attached a proposed amended Complaint, however, he wanted to alert the Court to the information that he discovered just the other day without any delay. If the Court requires a proposed amended Complaint prior to ruling on his request for leave to file the amendments, he will gladly submit one. Nevertheless, regardless of the outcome of his request to file an amendment, because of the additional information he has very recently discovered, he requires additional time to designate an expert witness on class related issues and requests that in the interim, this Court grant him such relief.

## REQUEST FOR ORAL ARGUMENT

Because of the importance of the issues raised in this Motion, the Plaintiff, James Henson, submits that oral argument is necessary and appropriate in this case.

Respectfully submitted,

_____
Charles H. Edwards IV

| | | | |
|---|---|---|---|
| JAMES HENSON | | * | IN THE UNITED STATES |
| | *Plaintiff* | * | DISTRICT COURT FOR |
| v. | | * | THE DISTRICT OF MARYLAND |
| NATURMED, INC. | | * | |
| | *Defendant.* | * | Case No.: 1:18-cv-01102 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 31, 2018, the foregoing motion and exhibits could not be uploaded to the CM/ECF system and that a notice of lengthy filing was filed on the same date. Upon receiving a call from the Clerk's office communicating that all documents needed to be uploaded and that paper copies could no longer be accepted, the Plaintiff has reduced the size of the documents and found a way to upload them to the CM/ECF server.

Accordingly, the foregoing Motion and exhibits have been delivered to the Defendant's attorneys of record through the CM/ECF system consistent with the Federal Rules of Civil Procedure.

Respectfully submitted,

_____
Charles H. Edwards IV