**JAMES HENSON**
5317 Plainfield Avenue
Baltimore, Maryland 21206,

     *Plaintiff*

v.

**NATURMED, INC., d/b/a
INSTITUTE FOR VIBRANT LIVING**
661 East Howards Road, Suite C
Camp Verde, Arizona 86322,

     Serve On: Resident Agent
     Julianne S. Lis-Milam
     8888 Keystone Crossing, Suite 600
     Indianapolis, Indiana 46240

and

**BACTOLAC PHARMACEUTICAL, INC.**
7 Oster Avenue
Hauppauge, New York 11788

     Serve On: Resident Agent
     CT Corporation System
     111 Eighth Avenue, Suite 13
     New York, New York 10011

**INDEPENDENT VITAL LIFE, LLC**
661 East Howards Road, Suite C
Camp Verde, Arizona 86322

     Serve On: Resident Agent
     Adrienne Hanley
     2155 West State Route 89A
     Sedona, Arizona 86336

and

**HKW CAPITAL PARTNERS III, L.P.**
8888 Keystone Crossing, Suite 600
Indianapolis, Indiana 46240

     Serve On: Resident Agent.
     Corporation Service Company
     251 Little Falls Drive.
     Wilmington, Delaware 19808

\*   **IN THE UNITED STATES DISTRICT COURT**

\*   **FOR THE DISTRICT OF MARYLAND,**

\*   **NORTHERN DIVISION**

\*

\*

\*

\*   *Jury Trial Demanded on Behalf of the Plaintiff*

\*   *and the Proposed Class of Maryland Residents*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

\*

. \*

\*

*Defendants*    *    Case Number: 1:18-cv-01102

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## AMENDED CLASS ACTION COMPLAINT

**NOW COMES** the Plaintiff, James Henson, by and through his attorneys, Charles H. Edwards IV and the Law Office of Barry R. Glazer, LLC, files this statewide class action against the Defendants, NaturMed, Inc., Bactolac Pharmaceutical, Inc., Independent Vital Life, LLC, and HKW Capital Partners III, L.P., on behalf of State of Maryland consumers, and states the following in support thereof:

## NATURE OF THE ACTION

1.      Plaintiff and members of the proposed Class purchased and ingested dietary supplements that were manufactured, distributed, and/or were directly sold by Defendant, NaturMed, Inc. (*hereinafter,* "NaturMed").

2.       Defendant NaturMed's dietary supplements contained substances that are toxic to human beings and that have resulted in the serious illness and death of human beings who have consumed them.

3.      Defendant NaturMed knew that its dietary supplements contained toxic substances; however, rather than discontinuing the sales of its toxically contaminated dietary supplements and informing consumers that its dietary supplements that had been purchased previously were contaminated by toxic substances, it both remained mute with respect to the dietary supplements that it had already sold and continued to sell its toxically contaminated dietary supplements.

4.      What is more, the contamination was not limited to dietary supplements. HKW Capitol Partners (*hereinafter*, "HKW Partners") was NaturMed's  controlling shareholder, held multiple positions on NaturMed's board of directors, and orchestrated transfers of NaturMed's assets once it became known that NaturMed's dietary supplements were poison. Meanwhile, Bactolac Pharmaceutical was toxic. It mixed into NaturMed's dietary supplements harmful chemicals and toxins. And Independent Vital Life, after devaluing NarurMed's assets from within, purchased NaturMed for a song and continued selling identical products under what appears on the packaging of the dietary supplements as the same old company that it purportedly replaced.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and diversity of citizenship under 28 U.S.C. § 1332(a).  Plaintiff alleges, upon information and belief, that there are thousands of proposed class members (*hereinafter,* "Class Members") and that the aggregated amount in controversy for the Plaintiff and the Class Members exceeds five million dollars ($5,000,000.00) exclusive of interest and costs. This Court

has supplemental jurisdiction over the state law claims presented herein pursuant to 28 U.S.C. §1367.

6.      Venue in this judicial district is proper pursuant to 28 U.S.C. §§1391(a), (b), and/or (c) because the Defendants conduct business in this district and a substantial part of the events and omissions giving rise to this action occurred in this district.

## JURY TRIAL DEMANDED

7.      Pursuant to Amendment VII to the Constitution of the United States of America and Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands a jury trial of this action on behalf of himself and the Class Members.

## THE PARTIES

8.      Plaintiff James Henson is and was, at all times relevant, an adult resident of Baltimore City, Maryland, where he ordered All Day Energy Greens – Original Hi-Octane Energy Drink for Health & Life (*hereinafter*, "All Day Energy Greens"), a dietary supplement, from the Defendant's website.

9.      Defendant NaturMed is a corporation registered in the State of Indiana and doing business in the State of Maryland. Defendant Naturmed's principal address is 661 East Howards Road, Suite C, Camp Verde, Arizona 869322 and, upon information and belief, can be served with process through its registered agent, Julianne S. Lis-Milam, located at 8888 Keystone Crossing, Suite 600, Indianapolis, Indiana 46240.

10.     Defendant Naturmed manufacturers, distributes, markets, and sells dietary supplements, including All Day Energy Greens®, Go Ruby Go!®, TriMotion™ Joint Health Formula, SeaNu Hair™, ProstaEZ™, Natto BP Plus™, Reconnect—Hearing Support™, Gluco Harmony®, and Vision Clear® and holds itself out to the public as manufacturing safe, nutritious, beneficial, high-quality dietary supplements.

11.     Defendant NaturMed sells the dietary supplements, including All Day Energy Greens®, directly to consumers and through various distributors and retailers. These sales have generated tens of millions of dollars for the NaturMed, significant amounts of which NaturMed invested in promoting trust and confidence among its consumers.

12.     Defendant Bactolac Pharmaceutical (*hereinafter,* "Bactolac") is a corporation registered in the State of New York with its principal business address located in Hauppauge, New York. Bactolac manufactures products, including dietary supplements, for distribution across the

United States, including in the States of New York, Alabama, Arizona, California, Illinois, Missouri, Oregon, South Carolina, Texas, Virginia, and Wisconsin.

13.     Defendant Bactolac can be served through its registered agent for service of process, CT Corporation System, 111 Eighth Avenue, Suite 13, New York, New York 10011.

14.     Defendant Independent Vital Life, LLC (*hereinafter, "*IVL2") is a limited liability company registered in the state of Delaware with its principal place of business in Camp Verde, Arizona. Defendant IVL can be served through its agent of record, Adrienne C. Hanley, 2155 W. State Route 89A, Sedona, Arizona 86336.

15.     IVL is a mere continuation of NaturMed, and is therefore liable as a successor entity.

16.     Defendant HKW is a limited partnership registered in the state of Delaware with its principal place of business in Indianapolis, Indiana. Prior to April 27, 2017, HKW was a shareholder and member of the NaturMed Board of Directors. Defendant HKW can be served through its agent of record, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

17.     As set forth in more detail below, on or around April 27, 2017, after several lawsuits were filed against NaturMed alleging its dietary supplements were toxic and/or dangerous, NaturMed began to experience significant financial difficulty. Defendant IVL2, along with assistance from HKW, obtained a security interest in NaturMed, liquidated the company, sold NaturMed's assets to IVL2 for a fraction of their value, and retained key NaturMed personnel in positions of authority, including NaturMed's founder and member of the board of directors, Don Elgie.

18.     IVL2, in other words, is the same legal person as NaturMed, having a continued existence under a new name.ong consumers of their supplements.

## INTRODUCTORY FACTS

19.     As the manufacturer, distributor, and retail seller of its dietary supplements, NaturMed claims that it is "passionate about helping people improve their health so they can enjoy their life to the fullest" and that its products "reflect our belief that nutritional support is a key component to achieving lifelong health."

20.     NaturMed further claims that its product offerings "combined the best of science and nature, giving you the most effective solutions for your health needs."

21. On its website, NaturMed made the following "promise[s] to you" about its dietary supplements:

- "Featuring pure, all natural ingredients and our entire line of health supplements, is [*sic*] formulated based on the latest scientific research, clinical trials, and case studies."

- "IVL regularly conducts Good Manufacturing Practices (GMP) reviews in accordance with FDA standards. Our ingredients are tested and retested throughout the production process to verify the highest purity and potency."

- All IVL formulas are manufactured in the USA using only NSF Certified facilities which protects consumers by ensuring our supplements contain only the ingredients listed on the label in the dosage indicated."

22. In particular, on its website and content packing, NaturMed represented to consumers that its supplement known as All Day Energy Greens is an "all natural energy drink" with "no chemical additives" that "[n]aturally [i]ncreases [e]nergy, [i]mproves [d]igestion, [r]ich in [a]ntioxidant [s]uperfoods, [s]upports [w]eight [m]anagement" and that it "helps support healthy digestive function."

23. Furthermore, NaturMed's product directions for All Day Energy Greens advises customers to "[s]upercharge your energy and overall health with All Day Energy Greens."

24. NaturMed's product directions make the following claims: "This green superfood is a daily dose of veggies—and a whole lot of extra pep—in one glass! JUST ONE TABLESPOON mixed in water or a smoothie makes for a truly delicious and refreshing beverage that exceeds the nutritional equivalent of FIVE servings of vegetables and fruits."

25. NaturMed's product directions specifically claim that All Day Energy Greens is "one of the most potent, energizing, immune-enhancing drinks available."

26. These representations are false and materially misleading because All Day Energy Greens contains substances known to be harmful or toxic when ingested by human beings.

27. In fact, in March 2016, NaturMed issued a recall in the State of California for various lots of its dietary supplements based on their contamination with toxic substances.

28. NaturMed claimed that the aforementioned recall was being performed due only to "some reported cases of gastrointestinal distress." In reality, however, All Day Energy Greens was hazardous for human consumption and could cause severe, chronic illness, bodily impairment, and death — none of which were published or otherwise disclosed to California consumers nor any other consumers, including the Plaintiff and the proposed Class.

### PLAINTIFF'S PURCHASE AND CONSUMPTION OF ALL DAY ENERGY GREENS

29.     Plaintiff purchased All Day Energy Greens through the NaturMed's website multiple times, with purchase and delivery occurring in the State of Maryland.

30.     In purchasing the All Day Energy Greens, the Plaintiff specifically relied on representations from NaturMed, set forth more fully above, including the representation that the dietary supplements offered by NaturMed were safe, effective, immune-enhancing, and beneficial.

31..     In August 2015, the Plaintiff began suffering severe abdominal and esophageal pain after ingesting All Day Energy Greens for over a year.

32..     In September and October 2015, the Plaintiff visited multiple doctors regarding his severe abdominal and esophageal pain, including a primary care physician and a gastroenterologist. Those physicians performed numerous tests, including an ultrasound, in an attempt to diagnose the abdominal pain.

33.     Following the Plaintiff's multiple visits to multiple doctors, it was discovered that it was All Day Energy Greens that had caused him to sustain severe abdominal and esophageal pain and other severe pain including, but not limited to, pain associated with dysphagia, gastro-esophageal reflux disease, and dysphonia, which were all sustained by the Plaintiff as a result of his ingestion of All Day Energy Greens.

### NATURMED ISSUED A PRIVATE RECALL OF ALL DAY ENERGY GREENS, FAILING TO DISCLOSE ANY DANGEROUS SUBSTANCES

34.     Upon information and belief, NaturMed has received countless complaints from consumers of its products based on their illnesses.

35.     Upon information and belief, NaturMed became aware of the dangerous and defective nature of its products by July 2015 at the latest.

36.     Various lots of All Day Energy Greens contain active bacteria and other contaminations which, among other things, can cause nausea, vomiting, diarrhea, dehydration, coma, and death. As well, the bacteria and other contaminations can cause the ongoing injuries sustained by the Plaintiff including, but not limited to, dysphagia, gastro-esophageal reflux disease, and dysphonia.

37.     NaturMed, in response to its knowledge that its products were contaminated, issued a private recall in March 2016. Specifically, on March 11, 2016, NaturMed issued a recall of its

All Day Energy Greens distributed nationwide between July 17, 2014 and July 21, 2015, due to reported gastrointestinal distress.

38. In connection with this recall, NaturMed sent letters to consumers who had purchased the product directly from the NaturMed's website. The letter claimed, "a voluntary recall has been initiated as a precaution due to some reported cases of gastrointestinal distress possibly associated with consumption of a product you purchased from us."

39. Despite knowing that individuals commonly resell their products, however, NaturMed did not issue a public recall of their supplements nor did it elaborate further about the reason for its recall beyond stating that there was a possibility that some reported cases of gastrointestinal distress were due to the consumption of All Day Energy Greens.

40. Upon information and belief, NaturMed did not inform its distributors of the recall.

41. Upon information and belief, NaturMed did not inform any retailer of its decision to recall its supplements or of the danger that those supplements could pose to consumers.

42. Despite knowing that individuals may come into contact with All Day Energy Greens after being given those products by a customer, NaturMed did not issue any public notification that members of the public should not consume its supplements due to the risk of severe health problems.

## NATURMED'S RELATIONSHIP WITH BACTOLAC

43. Pursuant to an agreement, Bactolac manufactured and blended dietary supplements for NaturMed, including All Day Energy Greens.

44. NaturMed and Bactolac devised a formula and list of ingredients, and Bactolac was responsible for manufacturing the supplement, including All Day Energy Greens.

45. NaturMed also provided Bactolac with product labels for All Day Energy Greens, and Bactolac affixed these labels to each product container as it was packaged.

46. The product labels for All Day Energy Greens contain a list of ingredients that Defendants NaturMed and Bactolac represented were contained in the All Day Energy Greens product.

47. Bactolac then shipped the packaged dietary supplements back to NaturMed for nationwide distribution from NaturMed's distribution center in Arizona.

48. NaturMed issued a recall of All Day Energy Greens but failed to disclose of the product was dangerous.

49.     Beginning as early as 2014, NaturMed received numerous complaints from consumers claiming that consumption of All Day Energy Greens made them sick.

50.     Beginning in 2014 and continuing through early 2016, the product labels for All Day Energy Greens do not comply with the ingredients on the product label.

51.     Indeed, various lots of All Day Energy Greens manufactured prior to 2016 contain active bacteria and other contaminations, which can cause nausea, vomiting, diarrhea, dehydration, coma, and death.

52.     Plaintiff and Class Members purchased canisters of All Day Energy Greens that contained ingredients that did not comport with the product label because they contained bacteria and other contaminations and/or ingredients not listed on the product label.

53.     On March 11, 2016, NaturMed issued a recall of its All Day Energy Greens product manufactured and distributed nationwide between July 17, 2014 and July 21, 2015, due to reported gastrointestinal distress.

54.     In connection with this recall, NaturMed sent letters to some consumers who purchased All Day Energy Greens directly from NaturMed.

55.     The letter stated that "a voluntary recall has been initiated as a precaution due to some reported cases of gastrointestinal distress possibly associated with consumption of a product you purchased from us."

56.     In reality, All Day Energy Greens was hazardous for human consumption and could cause severe, chronic illness, bodily impairment, and death—none of which were disclosed to consumers.

57.     NaturMed did not otherwise publicize the All Day Energy Greens recall, either by publishing notice of the recall on its website or in other publicly accessible print or online sources.

58.     Furthermore, NaturMed knew that direct purchasers of the product commonly resold All Day Energy Greens, yet it made no effort to notify those indirect purchasers.

59.     NaturMed informed some, but not all, known retailers that it was recalling its All Day Energy Greens products. Even where it informed a retailer, however, NaturMed did not explain the danger that the product ultimately posed to consumers.

### ATTEMPT TO EVADE LIABILITY

60.     In 2016 and 2017, several lawsuits were filed against NaturMed alleging personal injury and wrongful death caused by consumption of All Day Energy Greens.

61.     On or about April 27, 2017, IVL2 was incorporated in the state of Delaware by Don and Johna Elgie, the original founders of NaturMed.

62.     On or around April 27, 2017, IVL2 entered into an agreement for the purchase of all of NaturMed's assets.

63.     On or about April 27, 2017, NaturMed ceased business operations.

64.     On or about May 1, 2017, IVL2 commenced business operations.

65.     IVL2 operates at NaturMed's former location, 661 E. Howards Road, Camp Verde, Arizona.

66.     IVL2 retained NaturMed's initials and logo.

67.     IVL2 also retained many key personnel from NaturMed, including NaturMed's Director of Operations.

68.     IVL2 continues to operate NaturMed's website, www.ivlproducts.com, selling NaturMed products, which still bear NaturMed's "Institute for Vibrant Living" brand.

69.     IVL2 has made every effort to benefit from the reputation established by NaturMed. In addition to maintaining NaturMed's logo and website, www.ivlproducts.com still contains customer reviews that pre-date IVL's ownership of NaturMed's products.

70.     IVL2 facilitated a seamless transfer of NaturMed's business, with no interruption in business operations.

80.     Following the sale of NaturMed's assets to IVL2, IVL2 immediately continued the operation of NaturMed's business, including selling products bearing NaturMed's product labels.

81.     Following the asset sale, NaturMed, under the direction of its shareholders and board members HKW, distributed the proceeds of the sale to HKW, rendering NaturMed insolvent.

82.     Since the asset sale, NaturMed has ceased business operations. NaturMed has not filed articles of dissolution, but is delinquent in filing its 2017 annual report with the Arizona Corporation Commission.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff re-alleges all preceding paragraphs of this Amended Complaint as if set forth verbatim herein.

84.     Plaintiff brings this lawsuit as a class action pursuant to Rule 23(a) and (b)(2) or, in the alternative, (b)(1) or (b)(3) of the Federal Rules of Civil Procedure on behalf of the following defined Class Members:

A.  **The Class:** From January 1, 2015, to present, the Plaintiff and all similarly situated individuals and entities residing in the State of Maryland who purchased All Day Energy Greens.

B.  **The Medical Treatment Subclass:** From January 1, 2015, to present, the Plaintiff and all similarly situated individuals residing in the State of Maryland that purchased All Day Energy Greens for personal or household use and not for resale and who incurred or may incur any monetary damages due to illness, injury, or death resulting from the ingestion of All Day Energy Greens.

C.  Excluded from the Class is the Defendant, its affiliates and families, and the judge assigned to this matter and his or her staff.

85.     **Numerosity.**  The requirements of Rule 23(a)(1) of the Federal Rules of Civil Procedure are satisfied in that there are too many Class Members for joinder of all of them to be practicable. Upon information and belief, as of the filing of this Complaint there are greater than one thousand (1,000) consumers who purchased contaminated All Day Energy Greens from the Defendant and/or suffered either monetary loss, physical illness, or death as a result of their purchases that reside in the State of Maryland.

86.     **Commonality.** The claims of the Class Members raise numerous common issues of fact and law, thereby satisfying the requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure. Every issue concerning liability is common to all the Class Members because all issues concern the actions of the Defendants with respect to the manufacturing, distribution, and sale of All Day Energy Greens. These issues are common in that, when answered as to one of the Class Members, a significant number of Class Members will be affected. As to liability and relief, the counts set forth in this Complaint raise the following common issues of fact and law, among others:

A.  Whether All Day Energy Greens contained dangerous substances unfit for human consumption?

B.  Whether the Defendants knew or should have known that All Day Energy Greens contained dangerous substances unfit for human consumption?

C.  Whether the Defendants failed to take appropriate steps to ensure that All Day Energy Greens did not contain dangerous substances?

D.  Whether the Defendants had a duty to disclose the true nature of All Day Energy Greens to the Plaintiff and the Class Members, including the fact that All Day Energy Greens contained dangerous substances?

E.     Whether the Defendants omitted and/or failed to disclose material facts concerning All Day Energy Greens to the Plaintiff and the Class Members, including the fact that All Day Energy Greens contained dangerous substances?

F.     Whether the Defendants violated their duty to warn the Plaintiff and the Class Members of the risks of consuming All Day Energy Greens, including the risks associated with the substances contained therein?

G.     Whether All Day Energy Greens is a defective product or an unreasonably dangerous product?

H.     Whether the Defendants should be enjoined from the sale of All Day Energy Greens?

I.     Whether HKW and/or IWL2 should be held financially responsible for any judgment arising out of this litigation?

J.     Whether Bactolac introduced poisonous, toxic, and/or contaminated ingredients into the mixture for All Day Energy Greens.

87.     **Typicality.** The claims of the named Plaintiff is typical of the absent Class members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3) of the Federal Rules of Civil Procedure. For example, the named Plaintiff and the Class Members all suffered injury as a result of the purchase and consumption of All Day Energy Greens. The actions of the Defendants have been systematic and have continued despite knowledge that they were selling defective and potentially deadly products. Defendants violated state and federal law in the same manner with each Class Member. The nature of the inquiry t with respect to the Plaintiff and the Class Members is the same – the Defendants' manufacture, distribution, and sale of contaminated and potentially deadly dietary supplements. As well, the liability of HKW and/or IWL2 as set forth above.

88.     **Adequacy of Representation.** The requirements of Rule 23(a)(4) of the Federal Rules of Civil Procedure are satisfied in that Plaintiff has a sufficient stake in the litigation to vigorously prosecute claims on behalf of the Class Members and the Plaintiff's interests are aligned with those of the Class Members. There are no defenses of a unique nature that may be asserted against Plaintiff individually, as distinguished from the other Class Members, and the relief sought by the Plaintiff is common to all of the Class Members. Plaintiff does not have any interest that is in conflict with or is antagonistic to the interests of the Class Members, and has no conflict with any other Class Member. Plaintiff has selected counsel who are skilled in class action

litigation and are well-qualified to carry out their duties as class counsel, having handled large-scale, labor-intensive, legally-complex cases on a regular basis.

89.     **Declaratory and Equitable Relief.** The requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are satisfied in that the Defendants' actions affected and will affect the Class Members in a similar manner, making appropriate final declaratory and injunctive relief with respect to the Class as a whole. For example, among other forms of equitable relief, the Plaintiff seeks with respect to the Class as a whole a judicial declaration that the NaturMed sold untested, contaminated, potentially deadly dietary supplements and that the NaturMed be enjoined from such activities in the future. Similarly, the Plaintiff seeks a judicial declaration that Bactolac knowingly contaminated All Day Energy Greens and that HKW and/or ILW2.

90.     **Inconsistent or Varying Adjudications.** In the alternative, the requirements of Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure are satisfied in that the prosecution of separate actions by individual Class Members would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for the Defendants. For example, one court could rule that it was improper for NaturMed to sell contaminated and potentially deadly dietary supplements, while another court could rule that such acts were proper.

91.     **Predominance and Superiority.** Alternatively, all of the requirements for Rule 23(b)(3) of the Federal Rules of Civil Procedure are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation. In particular, the Plaintiff and the Class Members have suffered a common cause of injury, namely the manufacture, sale and distribution of contaminated and potentially deadly dietary supplements. The Class members' legal claims arise exclusively under Maryland law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all the Class Members is economically unfeasible and procedurally impracticable. The likelihood of individual Class members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgment while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. As a result, the desirability to concentrate litigation in this

forum is significantly present. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance of a class action. Relief concerning the Plaintiff's rights under the laws herein alleged and with respect to the Class Members would be proper.

# CLAIMS FOR RELIEF

## COUNT I – BREACH OF IMPLIED WARRANTY
### *AGAINST NATURMED AND BACTOLAC*

92.     Plaintiff realleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 91 as if the same were set forth at length herein.

93.     Plaintiff and the Class Members purchased All Day Energy Greens, produced, marketed, distributed, and sold by NaturMed, and thereafter, the Plaintiff and the Class Members consumed the  All Day Energy Greens pursuant to the NaturMed's directions and instructions.

94.     Privity of contract existed between the Plaintiff and the NaturMed and between the Class Members and Naturmed.

95.     At the time of the sales, deliveries, and consumption of the All Day Energy Greens, NaturMed and Bactolac impliedly warranted to the Plaintiff and the Class Members and the Plaintiff and the Class Members had an implied understanding that the All Day Energy Greens were merchantable and fit for the ordinary purpose for which dietary supplements are intended, namely, safe human consumption as a dietary supplement.

96.     At the time of sales, deliveries, and consumption of the All Day Energy Greens, NaturMed and Bactolac impliedly warranted to the Plaintiff and the Class Members that All Day Energy Greens were fit for the particular purpose which the NaturMed had communicated to the Plaintiff and Class Members, *inter alia*, through marketing and on the All Day Energy Greens' packaging, that the All Day Energy Greens were a dietary supplement that would have a positive impact on the health of the Plaintiff and the Class Members as communicated more fully above.

97.     NaturMed and Bactolac held themselves out to the public as possessing superior knowledge and skill in formulating, manufacturing, preserving, and packaging dietary supplements and the Plaintiff and the Class Members relied on this superior knowledge and skill of NaturMed and Bactolac in selecting the All Day Energy Greens to supplement their particular diets.

98.     As communicated more fully above, All Day Energy Greens were not safe for human beings to consume and have caused people, including the Plaintiff and the Class Members, to become ill and/or die after consumption.

99.     At the time of the manufacturing of the All Day Energy Greens and when the All Day Energy Greens left the manufacturer, there existed the defects set forth herein and more fully throughout this Amended Complaint.

100.. All Day Energy Greens constitutes a "good," *inter alia,* within the meaning of Maryland Code, Commercial Law § 2-105.

101. The conduct of NaturMed and Bactolac as described herein constitutes a breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, *inter alia*, pursuant to Maryland Code, *Commercial Law*, §§ 2-314, *et seq.*, in that All Day Energy Greens were dangerous and not fit for the purpose of human consumption or to have a positive impact on the Plaintiff or the Class Members' particular diets, which directly and proximately caused the Plaintiff and Class Members to suffer economic loss and to sustain severe injuries.

102. Accordingly, the Plaintiff and Class members are entitled to the specific relief as requested more fully below.

<u>COUNT II – BREACH OF EXPRESS WARRANTY</u>
*AGAINST NATURMED*

103. Plaintiff realleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 102 as if the same were set forth at length herein.

104. Privity of contract existed between the Plaintiff and NaturMed  and between the Class Members and NaturMed .

105. Through the NaturMed's marketing, packaging, directions, and instructions, NaturMed made express representations and created express warranties with the Plaintiff and the Class Members that the All Day Energy Greens conformed to the claims and representations that NaturMed had made through its marketing, packaging, directions, and instructions, including that the All Day Energy Greens were fit for consumption by human beings and would have a positive impact on the health of the Plaintiff and Class Members. The aforementioned express representations and express warranties include, but are not limited to, All Day Energy Greens being safe, "immune-enhancing" and promoting healthy digestive function.

106. Plaintiff and the Class Members reasonably and foreseeably relied on the NaturMed's express representations and express warranties in the contract for purchase of All Day Energy Greens for the purpose of human consumption, such that the warranty became a basis of the bargain by which the Plaintiff and the Class Members chose to purchase All Day Energy Greens.

107. All Day Energy Greens did not conform to NaturMed's express representations and express warranties, *inter alia*, because All Day Energy Greens were not and are not safe for human beings to consume and have caused people, including the Plaintiff and the Class Members, to become ill and/or die after consumption.

108. Bactolac's breaches of its express representations and express warranties were the proximate cause of the injuries sustained by the Plaintiff and the Class Members.

109. Accordingly, the Plaintiff and Class members are entitled to the specific relief as requested more fully below and, where applicable, consistent with Maryland Code, *Commercial Law*, §§ 2-313, *et seq.*

**COUNT III – NEGLIGENCE**
*AGAINST NATURMED AND BACTOLAC*

110. Plaintiff realleges, and incorporates by reference each of the allegations set forth in paragraphs 1 through 109 as if the same were set forth at length herein.

111. NaturMed and Bactolac owed a duty of care to the Plaintiff and the Class Members, *inter alia,* to ensure that all the dietary supplements that they manufactured, packaged, marketed, distributed, and sold, including All Day Energy Greens, were free from dangerous contaminants and would not cause deleterious and harmful effects upon consumption by human beings, including the Plaintiff and the Class Members. They further owed a duty to the Plaintiff and the Class Members to convey accurate and complete information concerning the risks and dangers associated with the purchase and consumption of All Day Energy Greens, which included the duty to warn the Plaintiff and Class Members upon any subsequent discovery that All Day Energy Greens posed a risk or danger to human beings that consumed All Day Energy Greens.

112. NaturMed and Bactolac breached this duty, *inter alia,* by manufacturing, packaging, marketing, distributing, and selling All Day Energy Greens containing contaminants which are harmful and deleterious to human beings that consumed the All Day Energy Greens, failing to use proper manufacturing and production practices, failing perform appropriate quality testing and control, failing to properly investigate reports of contamination, illness, and/or death, and failing to adequately warn consumers of the dangers associated with All Day Energy Greens.

113.     As a direct and proximate result of the acts and/or omissions of  NaturMed and Bactolac as set forth herein and more fully throughout this Complaint, the Plaintiff and Class Members have suffered severe injuries, damages and losses as alleged herein and more fully throughout this Complaint.

114.     All of the severe injuries, damages, and losses sustained by the Plaintiff and Class Members were directly and proximately caused by the aforementioned negligence of NaturMed and Bactolac and were incurred without contributory negligence or assumption of the risk on the part of the Plaintiff or the Class Members. Plaintiff and the Class Members also did not have the opportunity or knowledge of the dangers associated with the  All Day Energy Greens to avoid the severe injuries, damages, and losses that they sustained.

115.     Accordingly, the Plaintiff and Class members are entitled to the specific relief as requested more fully below.

### COUNT IV – NEGLIGENT MISREPRESENTATION
*AGAINST NATURMED AND BACTOLAC*

115.     Plaintiff realleges, and incorporates by reference each of the allegations set forth in paragraphs 1 through 114 as if the same were set forth at length herein.

116.     That there was privity of contract between NaturMed and the Plaintiff and between the NaturMed and the Class Members.

117.     NaturMed and Bactolac owed a duty of care to the Plaintiff and to the Class Members to ensure that all the dietary supplements that they manufactured, packaged, marketed, distributed, and sold, including All Day Energy Greens, were free from dangerous contaminants and would not cause deleterious and harmful effects upon consumption by human beings, including the Plaintiff and the Class Members. They further owed a duty to the Plaintiff and the Class Members to convey accurate and complete information concerning the risks and dangers associated with the purchase and consumption of All Day Energy Greens, which included the duty to warn the Plaintiff and Class Members upon any subsequent discovery that All Day Energy Greens posed a risk or danger to human beings that consumed All Day Energy Greens.

118.     NaturMed and Bactolac held themselves out to the public as possessing superior knowledge and skill in formulating, manufacturing, preserving, and packaging dietary supplements and the Plaintiff and the Class Members relied on this superior knowledge and skill

of NaturMed and Bactolac in selecting the All Day Energy Greens to supplement their particular diets to enhance their health.

119.    At the time of marketing, sale, delivery, and the consumption of All Day Energy Greens by the Plaintiff and the Class Members, NaturMed and Bactolac negligently communicated false statements to the Plaintiff and the Class members through marketing, packaging, directions, and instructions that All Day Energy Greens were fit for human consumption and that All Day Energy Greens would enhance the health of the Plaintiff and the Class Members as set forth more fully above.

120.    NaturMed and Bactolac intended for the Plaintiff and the Class Members to rely and act upon its negligently communicated false statements as set forth more fully above.

121.    NaturMed and Bactolac possessed the knowledge that the Plaintiff and the Class Members would probably rely on the negligently communicated false statements by NaturMed and Bactolac, *inter alia*, because NaturMed and Bactolac held themselves out to the public as possessing superior knowledge and skill in formulating, manufacturing, preserving, and packaging dietary supplements.

122.    All of the severe injuries, damages, and losses sustained by the Plaintiff and Class Members were directly and proximately caused by the aforementioned negligence of NaturMed and Bactolac and were incurred without contributory negligence or assumption of the risk on the part of the Plaintiff or the Class Members. Plaintiff and the Class Members also did not have the opportunity or knowledge of the dangers associated with the Defendant's All Day Energy Greens to avoid the severe injuries, damages, and losses that they sustained.

123.    Accordingly, the Plaintiff and Class members are entitled to the specific relief as requested more fully below.

### COUNT V – INTENTIONAL MISREPRESENTATION , FRAUD, AND/OR DECEIT
*AGAINST ALL DEFENDANTS*

124.    Plaintiff realleges, and incorporates by reference each of the allegations set forth in paragraphs 1 through 123 as if the same were set forth at length herein.

125.    Defendants made false representations of material fact to the Plaintiff and the Class Members, *inter alia*, as incorporated herein and set forth more fully above.

126.    Defendants knew that the false representations they made to the Plaintiff and the Class Members, *inter alia,* including those set forth above, were false when they made them or, in the alternative, the Defendants' false representations of material fact, *inter alia,* including those

set forth more fully above, were made with such reckless disregard for the truth that the knowledge of the falsity of the Defendants' statements can be imputed to the Defendants.

127.    Defendants made the false representations of material fact, *inter alia,* including those set forth above, for the purpose of defrauding the Plaintiff and the Class Members and/or inducing them to purchase All Day Energy Greens where they otherwise would have refrained from purchasing All Day Energy Greens.

129.    Plaintiff and the Class Members relied with justification on the Defendants' false representations of material fact, *inter alia,* including those set forth above.

130.    As well, the Plaintiff and the Class Members will sustain further injuries from the fraudulent transfer of NaturMed to IVL2 and the Defendants' fraudulent transfer of NaturMed's assets, both as set forth more fully above.

131.    Plaintiff and the Class Members suffered injuries and damages as set forth more fully throughout this Complaint as a direct result of their reliance upon the Defendants' false representations of material fact, *inter alia,* including those set forth above.

132.    Accordingly, the Plaintiff and Class Members are entitled to the specific relief as requested more fully below.

<u>COUNT VI – STRICT LIABILITY : DESIGN DEFECT</u>
*AGAINST NATURMED AND BACTOLAC*

133.    Plaintiff realleges, and incorporates by reference each of the allegations set forth in paragraphs 1 through 134 as if the same were set forth at length herein.

134.    NaturMed and Bactolac, their agents, servants, and their employees designed, created, manufactured, marketed, and distributed All Day Energy Greens.

135.    All Day Energy Greens was defective when the supplements left the control of NaturMed and Bactolac, their agents, servants, and employees, was placed in the stream of commerce by NaturMed and Bactolac, their agents, servants, and employees, and was ingested by the Plaintiff and the Class Members.

136.    The supplement All Day Energy Greens, is and was, unreasonably dangerous to Plaintiff and the Class Members, *inter alia,* as evidenced by the fact that a private recall was issued for the supplement in March 2016.

137.    At the time All Day Energy Greens left the hands of the NaturMed and Bactolac, their agents, servants, and employees, the supplement was not in a condition contemplated by the ordinary consumer, which was unreasonably dangerous to the consumer.

138.    All Day Energy Greens was dangerous to an extent beyond that which would be contemplated by the ordinary consumer with ordinary knowledge common to the community as to its characteristics.

139.    All Day Energy Greens was ingested by the Plaintiff and the Class Members without a substantial change in condition to the All Day Energy Greens, and was in the same condition at the time of the injuries and damages sustained by the Plaintiff and Class Members as when it left the control of NaturMed and Bactolac, their agents, servants and employees.

140.    Plaintiff and the Class Members used All Day Energy Greens in a reasonably foreseeable manner.

150.    Plaintiff's injuries and damages and the injuries and damages sustained by the Class Members were proximately caused by the Plaintiff's ingestion of All Day Energy Greens and the Class Members' ingestion of All Day Energy Greens, respectively.

151.    Accordingly, the Plaintiff and Class Members are entitled to the specific relief as requested more fully below.

### COUNT VII – STRICT LIABILITY: FAILURE TO WARN
*AGAINST NATURMED AND BACTOLAC*

152.    Plaintiff realleges, and incorporates by reference each of the allegations set forth in paragraphs 1 through 151 as if the same were set forth at length herein.

153.    NaturMed and Bactolac, their agents, servants, and its employees designed, created, manufactured, tested, inspected, marketed, and distributed All Day Energy Greens.

154.    NaturMed and Bactolac, their agents, servants, and its employees did not make All Day Energy Greens safe for reasonably foreseeable use.

155.    When All Day Energy Greens left the control of NaturMed and Bactolac, its agents, servants, and its employees, the dangerous condition of All Day Energy Greens was not obvious to the users of the product.

156.    All Day Energy Greens was defective when the supplement left the control of NaturMed and Bactolac and was ingested by the Plaintiff and the Class Members.

157.    The supplement, All Day Energy Greens, was ingested by the Plaintiff and the Class Members without a substantial change in its condition.

158.    The supplement, All Day Energy Greens, is and was, unreasonably dangerous to the Plaintiff and the Class Members, as evidenced by the fact that a private recall was issued for the supplement in March 2016.

159.     The warning that NaturMed, its agents, servants, and its employees issued was not adequate because NaturMed and Bactolac failed to issue a public recall of All Day Energy Greens and instead merely issued a private recall.  NaturMed and Bactolac were fully aware that many consumers of All Day Energy Greens redistributed the Supplement to ordinary consumers.  As a result, many consumers of All Day Energy Greens were not adequately warned of the dangers of ingesting All Day Energy Greens. As well, NaturMed and Bactolac, its agents, servants, and employees, did not issue a warning to the consumers of All Day Energy Greens within an acceptable temporal period with respect to those consumers that were warned and the warning itself was inadequate insofar is it failed to advise of the ongoing horrific injuries and damages that All Day Energy Greens could cause consumers that ingested the supplement to sustain.

160.     Plaintiff's injuries and the injuries of the Class Members were proximately caused by the Plaintiff's ingestion of All Day Energy Greens and the Class Members' ingestion of All Day Energy Greens, respectively.

161.     Accordingly, the Plaintiff and Class Members are entitled to the specific relief as requested more fully below.

### COUNT VIII – VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
*AGAINST NATURMED AND BACTOLAC*

162.     Plaintiff realleges, and incorporates by reference each of the allegations set forth in paragraphs 1 through 161 as if the same were set forth at length herein.

163.     At all times relevant, NaturMed and Bactolac violated the Maryland Consumer Protection Act, Maryland Code, Commercial Law §§ 13-301, *et seq.*  (*hereinafter*, "MCPA"), *inter alia,* by the use of false and misleading representations or omissions of material fact in its marketing, promotion, and sale of All Day Energy Greens.

164.     Plaintiff and Class Members are purchasers, consumers, or other persons entitled to protection and relief under the MCPA.

165.     The MCPA authorizes the Plaintiff and Class Members to bring an action to recover for injury or loss sustained as the result of a practice prohibited by the Act.

166.     By engaging in the conduct described above, NaturMed and Bactolac have violated and continues to violate sections 13-301(1), (2), (3), and (9) of the MCPA by, among other things:

A.     engaging in unfair or deceptive trade practices as defined in section 13-301(1) by making false and misleading oral and written statements that had, and have, the capacity, tendency, or effect of deceiving or misleading Maryland consumers including, but not limited to, statements concerning the Defendants'

research, the health risks involved with consuming All Day Energy Greens, the results consumers can expect from using All Day Energy Greens, and the harmful contaminants in All Day Energy Greens;

B.     engaging in unfair or deceptive trade practices as defined in section 13-301(2)(i) by making representations that products have an approval, characteristics, ingredients, use, or benefit which they do not have including, but not limited to, its statements concerning the health consequences of using All Day Energy Greens and the harmful ingredients in All Day Energy Greens;

C.     engaging in unfair or deceptive trade practices as defined in Section 13-301(3) by failing to state material facts, the omission of which deceived or tended to deceive including, but not limited to, facts relating to the health risks associated with the ingestion of All Day Energy Greens; and

D.     engaging in unfair or deceptive trade practices as defined in Section 13-301(9) through deception, fraud, misrepresentation, and knowing concealment, suppression, and omission of material facts with the intent that Maryland consumers rely upon the same in connection with the promotion of All Day Energy Greens including, but not limited to, facts relating to the health risks of ingesting All Day Energy Greens.

167.    To remedy these violations of the MCPA, the Plaintiff and Class Members request that this Court enter an order for general restitution to prevent unjust enrichment from illegal conduct, for the costs of the action (including, but not limited to attorney's fees) pursuant to section 13-410 of the MCPA, and for the damages and equitable relief requested below.

## REQUEST FOR RELIEF

**WHEREFORE,** the Plaintiff, on behalf of himself and all similarly situated persons, respectfully prays for a judgment on each cause of action asserted herein and the following relief:

A.     an Order certifying that this action may be maintained as a class action, appointing Plaintiff and his counsel to represent the Class Members, and directing that reasonable notice of this action be given by the Defendants to all Class Members;

B.     joint and several monetary judgments in favor of the Plaintiff and Class Members and against the Defendants for actual or compensatory and presumed damages sustained by the Plaintiff and Class Members;

C.     punitive damages in an amount determined by a jury;

D.     a judgment determining that IVL2 and/or HKW Partners are jointly and severally liable for any judgments against NaturMed.

E.      a judgment in favor of the Plaintiff and Class Members and against the Defendants for joint and several damages and for a permanent injunction against the continued manufacture, distribution, and sale of contaminated dietary supplements;

F.      a judgment in favor of the Plaintiff and Class Members and against the Defendants for joint and several treble damages pursuant to the Maryland Consumer Protection Act, plus attorney's fees, and all costs of this action and all of the Plaintiff's related litigation costs, litigation fees, and litigation expenses, as well as pre-judgment and post-judgment interest as allowed by law; and

G.      a judgment in favor of the Plaintiff and against the Defendants for such other relief, either general or specific, which the Court may deem appropriate in law or equity and for which the Plaintiff duly pray.

December 2, 2018                 Respectfully submitted,

Law Office of Barry R. Glazer, LLC

By: *Charles H. Edwards IV*

Charles H. Edwards IV
P.O. Box 27166
1010 Light Street
Baltimore, Maryland 21230
📞 410-547-8568
🖨 410-547-0036
✉ charles.edwards@robihoodlawyers.com
*Attorneys for the Plaintiff*