IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMES HENSON | * | |
| Plaintiff, | * | |
| v. | * | Civil No. ELH-18-1102 |
| NATURMED, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

The above-referenced case was referred to the undersigned for review of plaintiff's Motion for Default Judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 48). Currently pending is plaintiff's Motion for Default Judgment ("Motion"). (ECF No. 61). Plaintiff also submitted a Pre-Hearing Summary of Evidence ("Summary of Evidence"). (ECF No. 63). Defendant has not filed any response. A hearing to determine the appropriate damages award was held on January 28, 2021. For the reasons discussed herein, I respectfully recommend that plaintiff's Motion (ECF No. 61) be GRANTED and that relief be awarded as set forth herein.

I.  **BACKGROUND**

A.  **Factual Background**

The following summary is based upon the Amended Complaint (ECF No. 31), the exhibits offered at the hearing, and the testimony of plaintiff. In or around April 2015, plaintiff purchased six canisters of defendant Naturmed, Inc. ("defendant") All Day Energy Greens nutritional supplement ("supplement"). (ECF No. 63 at 1). Plaintiff testified that he used the supplement as

1

instructed, mixing one scoop with juice once a day. (Id.; ECF No. 31 ¶ 24). In or around August 2015, plaintiff began suffering from "severe abdominal and esophageal pain." (ECF No. 31 ¶ 31). This severe pain included gastrointestinal reflux and difficulty speaking, known as dysphonia. (ECF No. 61 at 2). Plaintiff testified that it felt like his food would get stuck in his chest and it was a terrible feeling; eventually, this feeling caused plaintiff to feel afraid to eat. While plaintiff testified that he had experienced gastrointestinal reflux and dysphonia in the past, it had been previously controlled by over the counter or prescription medication, but in this case, the severe pain persisted despite these medications.

On or about March 18, 2016, plaintiff received a voluntary recall notice from defendant regarding the six canisters of defendant's supplement that plaintiff purchased in April 2015, noting "some reported cases of gastrointestinal distress." (ECF No. 31 ¶ 27-28; ECF No. 63-1). Plaintiff immediately ceased using defendant's supplement after receiving this notice. (ECF No. 63 at 1). Plaintiff's severe pain continued, however, and he testified that he became concerned that his condition was due to defendant's supplement. (Id.) Plaintiff, therefore, made an appointment with his primary care physician, Dr. Naiman, for May 13, 2016. (ECF No. 63-2 at 2-3). Following this appointment, plaintiff was referred to an ear, nose, and throat ("ENT") specialist, Dr. Hesham, who prescribed two stronger medications for plaintiff's condition and performed a flex laryngoscopy[1] on June 15, 2016. (Id. at 6-10). Plaintiff was also referred to a gastroenterologist, Dr. Blume, who examined plaintiff on June 27, 2016 and performed an

---

[1] A flex laryngoscopy is an "inspection of the larynx," otherwise known as the voice box, by placing a flexible tube in the back of the throat. Stedmans Medical Dictionary 480330 (2014).

2

esophagogastroduodenoscopy[2] and a colonoscopy[3] on July 6, 2016. (Id. at 11-12, 15-16, 24-26). On the following day, a pathologist, Dr. Moira Larsen, reviewed specimens collected during the esophagogastroduodenoscopy and colonoscopy procedures and found them to be consistent with gastroesophageal reflux. (Id. at 14-15). Following these procedures, plaintiff testified that he continues to experience severe gastrointestinal symptoms and his voice continues to be hoarse. (ECF No. 63 at 2). Plaintiff had a follow-up appointment with Dr. Naiman on October 12, 2017. (ECF No. 63-2 at 28-29).

### B. Procedural Background

On April 17, 2018, plaintiff filed his Complaint. (ECF No. 1). On July 10, 2018, counsel for defendant entered their appearances. (ECF Nos. 4, 5). On December 5, 2018, plaintiff filed a Motion to Amend Complaint (ECF No. 24), which the court granted on May 15, 2019. (ECF No. 30). Thereafter, plaintiff's Amended Complaint was filed on May 19, 2019.[4] (ECF No. 31). Plaintiff's Amended Complaint contains eight claims: Count I – Breach of Implied Warranty; Count II – Breach of Express Warranty; Count III – Negligence; Count IV – Negligent Misrepresentation; Count V – Intentional Misrepresentation, Fraud, and/or Deceit; Count VI –

---

[2] To perform an esophagogastroduodenoscopy, a physician uses a flexible tube inserted through the mouth to "examine the lining of the esophagus, stomach, and first part of the small intestine (the duodenum)" and take biopsies if necessary. EGD – esophagogastroduodenoscopy, MedLine Plus (Feb. 26, 2021), https://medlineplus.gov/ency/article/003888.htm.

[3] A colonoscopy is performed to examine the large intestine, or colon, and rectum, and take biopsies if necessary, by inserting a flexible tube through the anus. Understanding Colonoscopy, American Society for Gastrointestinal Endoscopy, https://www.asge.org/home/for-patients/patient-information/understanding-colonoscopy(2).

[4] Plaintiff's Amended Complaint named additional defendants Bactolac Pharmaceutical, Inc.; Independent Vital Life, LLC; and HKW Capital Partners III, L.P. (ECF No. 31). These additional defendants were never served, however, and were later voluntarily dismissed by plaintiff. (ECF No. 57).

Strict Liability – Design Defect; Count VII – Strict Liability – Failure to Warn; and Count VIII – Violation of Maryland Consumer Protection Act. (Id.)

On March 11, 2019, defense counsel filed a Motion to Withdraw, indicating that defendant was a dissolved corporation and providing defendant's last known address. (ECF No. 26). The court granted the Motion to Withdraw and ordered defendant to retain counsel by no later than April 11, 2019 in accordance with Local Rule 101.2(b). (ECF Nos. 27, 28). When defendant failed to retain counsel by April 11, 2019, the court ordered defendant to retain counsel by no later than June 28, 2019. (ECF No. 32). Defendant failed to retain counsel and has not answered or participated in the case since counsel withdrew their appearance on March 11, 2019. On February 5, 2020, the clerk of court entered an Order of Default against defendant. (ECF No. 40).

Plaintiff filed the pending Motion on November 30, 2020.[5] Plaintiff's Motion moves for default judgment solely based on Count III – Negligence. (ECF No. 61-1 at 1). At the court's request (ECF No. 62), plaintiff filed a Summary of Evidence preceding the evidentiary hearing. (ECF No. 63). On January 28, 2021, a hearing was held to determine the appropriate damages award.[6]

## II. STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001). It remains for the court, however, to determine whether these

---

[5] Due to procedural and substantial deficiencies, plaintiff's previous Motions for Default Judgment (ECF Nos. 47, 56) were denied without prejudice. (ECF Nos. 49, 58).
[6] Although notice of the hearing was sent to defendant at its last known address (ECF No. 63-7), defendant was neither present nor represented at the hearing.

4

unchallenged factual allegations constitute a legitimate cause of action. Id. If the court determines that liability is established, the court must then determine the appropriate amount of damages. Id. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-155 (2d Cir. 1999).

### III. DISCUSSION

#### A. Liability

I have reviewed plaintiff's Amended Complaint (ECF No. 31) and Motion (ECF No. 61), and, accepting as true plaintiff's well-pleaded factual allegations, find that plaintiff states a legitimate cause of action for negligence. To assert a claim of negligence in Maryland, plaintiff must prove that: (1) the defendant was under a duty to protect plaintiff from injury, (2) the defendant breached that duty, (3) plaintiff suffered actual injury or loss, and (4) the injury or loss proximately resulted from defendant's breach of duty.[7] 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co., 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013). A manufacturer "'has a duty to exercise reasonable care in the design and manufacture of [their] product' . . . [s]pecifically . . . so that it is safe for all reasonably foreseeable uses." Parker v. Allentown, Inc., 891 F. Supp. 2d 773, 780 (D. Md. 2012) (quoting Fischbach & Moore Int'l Corp. v. Crane Barge R-14, 632 F.2d 1124, 1127 (4th Cir. 1980)).

---

[7] Because the court's jurisdiction over this matter is based on diversity of citizenship, the court must apply Maryland law to issues of substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

As to the first element, defendant as the manufacturer of the supplement had a duty to exercise reasonable care in order to ensure the supplement was safe for reasonably foreseeable use. Parker, 891 F. Supp. 2d at 780. Plaintiff testified that he used the supplement as directed, which is clearly a reasonably foreseeable use. The second element is satisfied as defendant breached this duty of care because the supplement was found, according to defendant's voluntary recall notice, to cause gastrointestinal distress. (ECF No. 63-1).

With respect to the third and fourth elements, plaintiff maintains that his "severe abdominal and esophageal pain" were caused by defendant's supplement. As discussed below, the record before the court does not support that finding. The evidence, however, does establish that plaintiff suffered actual injury as a result of defendant's breach because defendant's recall caused plaintiff to seek medical attention for his condition once he became concerned that defendant's supplement caused his problems. As a result, plaintiff suffered actual loss or injury in the form of incurring medical expenses, undergoing invasive medical procedures, and suffering heightened anxiety and pain associated with the entire diagnostic process. Specifically, due to defendant's recall notice, plaintiff testified that he consulted with his primary care doctor and two specialists and underwent three invasive procedures to determine whether defendant's supplement caused harm: a flex laryngoscopy, a colonoscopy, and an esophagogastroduodenoscopy. (ECF No. 63 at 1). Defendant's breach was the proximate cause of plaintiff's injury, that is, his anxiety following the voluntary recall notice, his medical costs and his pain and suffering associated with the invasive procedures conducted to determine if defendant's recalled supplement was the cause of his problems. In sum, plaintiff has stated a legitimate cause of action for negligence.

B. **Damages**

Having determined that plaintiff has proven defendant's liability, I now undertake an independent determination of the damages to which plaintiff is entitled. Plaintiff seeks to recover the following damages: 1) economic damages amounting to $7,735.77; 2) noneconomic damages amounting to $830,000; 3) punitive damages amounting to $612,041.37; and 4) attorney's fees amounting to $61,204.23. (ECF No. 63 at 2-3).

Plaintiff attributes his ongoing severe gastrointestinal reflux and dysphonia to defendant's supplement and requests damages to reflect this injury. In a case such as this, however, evidence is required to connect defendant's breach to plaintiff's ongoing medical condition; it is not a case in which the court or a layperson could intuitively make this connection. See Virgil v. "Kash 'N' Karry" Service Corp., 61 Md. App. 23, 31, 484 A.2d 652, 656 (1984) ("The general rule is well established that expert testimony is . . . required when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman.").

Here, plaintiff has not offered any expert witness testimony regarding the connection between defendant's supplement and plaintiff's ongoing gastrointestinal pain and dysphonia. Although the medical records offered by plaintiff at the hearing note that he informed the doctors of his concerns that the supplement was the cause of his severe pain, none of plaintiff's doctors noted that they thought defendant's supplement was the cause of plaintiff's poor health. In fact, Dr. Blume, who performed plaintiff's colonoscopy and esophagogastroduodenoscopy, stated "I doubt that [plaintiff's conditions are] related to [defendant's] nutritional supplement that he stopped. [Plaintiff] is on multiple medications that may slow down his gut." (ECF No. 63-2 at 16). Plaintiff argues that defendant's voluntary recall notice, which admits that defendant's supplement caused "some reported cases of gastrointestinal distress," proves that defendant is the

cause of plaintiff's ongoing condition. (ECF No. 61-1). Yet, plaintiff testified that he experienced gastrointestinal reflux and dysphonia before taking defendant's supplement, although it was less severe than his current condition. Without any evidence, including medical expert testimony, to connect defendant's supplement with plaintiff's continuing or increased gastrointestinal pain and dysphonia, I am not able to conclude that defendant's breach caused plaintiff's condition.

I do find, however, that defendant's breach of its duty of care is causally connected to the injuries sustained by plaintiff during the time period between plaintiff's receipt of the voluntary recall notice on or about March 18, 2016, until plaintiff underwent the three procedures, the last of which concluded on July 6, 2016. During this timeframe, plaintiff believed defendant's supplement was the cause of his severe pain and distress, which led to suffering and anxiety. Further, the recall notice caused plaintiff to seek medical attention because he became concerned that defendant's supplement was the cause of his problems. Prior to the recall notice, he had not sought medical attention. Therefore, I recommend an award of damages for plaintiff's pain, suffering, anxiety, and medical expenditures during this timeframe. The record, however, does not support an award of damages for plaintiff's period of suffering either before he received the recall notice or after his medical procedures concluded as there is no evidence that defendant's supplement caused plaintiff's gastrointestinal distress, dysphonia, or any other medical condition.

### 1. Economic Damages

Plaintiff seeks economic damages to cover medical expenses of $7,735.77. (ECF No. 63-1 at 2). These damages encompass plaintiff's visit to his primary care doctor Dr. Naiman on May 13, 2016, plaintiff's flex laryngoscopy on June 15, 2016, plaintiff's consultation with a gastroenterologist on June 27, 2016, and plaintiff's colonoscopy, esophagogastroduodenoscopy, and subsequent pathology on July 6, 2016. (ECF No. 63-5 at 3). Additionally, plaintiff seeks to

recover the cost of a follow-up visit to Dr. Naiman on October 12, 2017, and costs of prescriptions related to plaintiff's gastrointestinal condition. (Id.) Plaintiff was unable to locate or obtain most of the medical bills for these provider visits and procedures. As a result, plaintiff offered the testimony of Ms. Catherine McFarland, an expert witness in medical billing,[8] regarding her estimate of plaintiff's actual medical costs included in plaintiff's Summary of Evidence. (ECF No. 63-5 at 3). At the hearing, plaintiff withdrew his request for $297.77 in prescription costs from his actual damages, leading to an adjusted actual damages amount totaling $7,438.00. As noted above regarding defendant's liability, I only find defendant to be liable for plaintiff's medical appointments and procedures between March 18, 2016 and July 6, 2016. In addition, I do not recommend an award to cover the follow-up appointment with Dr. Naiman that occurred on October 12, 2017, estimated at $125.00, because it occurred after the completion of the tests which did not link plaintiff's condition to defendant's supplement. (ECF No. 63-5 at 3). Accordingly, I recommend an award of $7,313.00 as plaintiff has established that these damages were caused by defendant's negligence.

### 2. Noneconomic Damages

Plaintiff requests $830,000 in noneconomic damages for pain and suffering. (ECF No. 63 at 2). Although plaintiff has sufficiently alleged pain and suffering and is therefore entitled to such damages, I recommend a reduced figure in light of the limited injuries which plaintiff has established were actually caused by defendant's breach. Noneconomic damages for bodily injury include "pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium,

---

[8] Ms. McFarlane, a registered nurse and legal nurse consultant (see ECF No. 63-4), testified at the evidentiary hearing to her extensive experience in medical billing. Based upon her qualifications and experience, I accepted Ms. McFarlane as an expert witness in the field of medical billing.

or other nonpecuniary injury." Md. Code Ann., Cts. & Jud. Proc. § 11-108. Plaintiff testified that, after receiving defendant's voluntary recall notice, he lost trust in manufacturers at large, doubted the integrity of other products, and lost faith in people. Plaintiff's belief that the supplement had caused physical damage also led plaintiff to experience heightened anxiety, to seek medical care, and to undergo three invasive, disconcerting, and painful procedures to examine his larynx, esophagus, stomach, small intestine, and large intestine. (ECF No. 61 at 3). Although plaintiff testified that he experienced gastrointestinal pain and dysphonia prior to receipt of the recall notice, and after the completion of his medical tests, the record, as noted above, does not support an award for these damages. I recommend an award of noneconomic damages for plaintiff's pain, suffering, inconvenience, and mental anguish suffered during the period between when plaintiff received defendant's voluntary recall notice on March 18, 2016 and the conclusion of plaintiff's medical procedures on July 6, 2016. While the court is sympathetic to plaintiff's ongoing pain from his gastrointestinal issues, an award of noneconomic damages must be limited to cover only this discrete time period in light of the lack of causal connection between plaintiff's condition and defendant's supplement. Accordingly, I recommend an award of $50,000 in noneconomic damages.

### 3. Punitive Damages

Plaintiff seeks $612,041.37 in punitive damages, alleging that defendant's conduct was egregious since defendant sold the supplement to plaintiff during a recall. (ECF No. 61 at 4). "In a non-intentional tort action, the trier of facts may not award punitive damages unless the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, i.e., 'actual malice.'" Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 652, 325 Md. 420, 460 (1992). In this case, plaintiff offered no testimony to indicate that that defendant acted

in accordance with this "actual malice" standard. Therefore, I do not recommend an award for punitive damages.

### 4. Attorney's Fees

Plaintiff requests an award of attorney's fees in the amount of $61,204.23. (ECF No. 63 at 2). The "American Rule" provides that each litigant in a case will pay their own attorney's fees unless the relevant statute or contract in question provides otherwise. Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253 (2010); Eastern Shore Title Co. v. Ochse, 160 A.3d 1238, 1254, 453 Md. 303, 330 (2017). As no statute or applicable contract provides for the recovery of attorney's fees for negligence claims, I do not recommend an award of attorney's fees as there is no legal basis for such an award.

Accordingly, as stated above, I recommend an award of $7,313.00 in economic damages and $50,000.00 in noneconomic damages, resulting in a total damages recommendation of $57,313.00.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that:

1. The Court grant plaintiff's Motion for Entry of Default Judgment (ECF No. 61);
2. The Court award plaintiff damages in the amount of $57,313.00 in accordance with the recommendations above.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant at their last known address. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:   April 9, 2021                                  /s/
                                                Beth P. Gesner
                                                Chief United States Magistrate Judge